The next case called for oral argument is Peach v. McGovern Counsel, whenever you're ready, you may proceed. May it please the Court, my name is George Rufflinger. I'm representing the plaintiff today. We're seeking a new trial because of the admission of certain evidence by defense counsel. This is a case involving a low-impact case, rear-ended. My client, Mr. Peach, was in his pickup truck, stopped at a stop sign, and he was rear-ended. Now, the evidence in this case for the plaintiff was that he was hit hard in the back of an open truck. That the defense left the scene and was arrested and put guilty of leaving the scene. The plaintiff was taken to the ER that night, and his doctor testified, I think a Templer in particular was the one who testified, that the injuries were caused by the collision, that there is no correlation between speed of impact and the extent of the injury. The doctor testified there is no correlation between the damage to the vehicle and the extent of the injury. The doctor testified that the injury can happen, like he had, at low speed, with little damage to the vehicle from the back more commonly than not it does. Now, what did the defendant put on in this case? The defendant admitted that she had hit him. She caught the defendant in the rear. The plaintiff's defense called the call, but it wasn't a clear admission. In fact, the judge directed on negatives. And then we had photos. The photos of the, I'm sure you've all seen cases of this nature before. In fact, there's some cases directly opposed to my argument from this case. But those cases even had more evidence than this one did. There's the Ford case, and there is the Frontrier case. Both cases of where there was more support for the introduction of those photographs than in this case. In both cases, both of those cases, Dr. Contella, her regular appearance in cases on behalf of defense, testified that none of the, that she didn't consider any of the elements that one normally takes into consideration, but just from the extent of the damage to the vehicle, she could say that the injury could have happened from that. Now, in this case, we don't have any doctor saying that. You don't have anyone? There's no doctor saying that. The only doctor is the Supreme Physician, the plaintiff in this case, who said just contrary to that, that in fact you cannot assume anything. This alleged common knowledge, which appeared in a lot of the prior cases dealing with this from various districts, doesn't exist. It's like saying there's no closed warrant. It just doesn't exist. The actual scientific literature, which we included in the secondary authority in this case, points out that that's false, that you have to take into consideration many elements. My doctor in this case said that. We don't know. Mr. Ripplinger, I understand there's a motion to strike on those. I'm sorry? There is a motion to strike on those two articles that we took with the case. I understand that. You're aware of that. I'm wondering why they weren't admitted at the trial stage. I didn't have them at that stage. Well, that's an honest answer. That always interferes with introducing things at the trial stage. Of course, frequently we don't have such a case to recite in this court at the trial stage either. Sometimes we recite it afterwards, and sometimes the lawyers simply don't find it. And that happens. In this case, though, the only testimony about the effect of the literature comes from defense counsel, a witness who I cannot cross-examine, who I know nothing of. He comes up, and the only person to talk about the damage to the vehicle and injury is defense counsel. That cannot be allowed to continue. There has to be some basis, some scientific basis for the conclusion that we're making. At one point, as I pointed out, it was common knowledge that the earth was flat. We know that's not true anymore. And though common knowledge is actually some correlation between the damage to the vehicle, the speed of the vehicle, the injury, the plane, there is no. People who have to say that's common knowledge have no basis for that common knowledge because it doesn't exist. Mr. Ruffinger, I had a question on this case. Yes, ma'am. When the deposition of the doctor was taken, did defense counsel ask anything about the photos? I e-mailed the photos to the doctor. He didn't get them for some reason. I should say he didn't.  He gave the doctor another copy of the photograph, but he said it doesn't really matter what the photographs show. There could be light damage to the vehicle. There could be a low-impact collision, and these injuries could still occur. So the first time that you knew, at least, about what his testimony was going to be with regard to these photographs was when the defendant introduced them or you went to introduce them? I went to introduce them because the doctor didn't have them. You were both on telephone. No, I'm talking about a trial. Did you introduce the photographs with the doctor or did the defendant? The defendant would have, but he didn't. The photographs were introduced by way of the defendant. Was this picture look like your car looked like at the day of the accident? That's my question. It seemed odd that there was no testimony in the deposition about the photographs. You didn't introduce the photographs, but then the defense introduced the photographs with your doctor, right? No. No. What happened? No, the doctor didn't ever get the photographs. I'm talking about a trial. He did by deposition. Oh, okay. So the doctor came in by deposition. Yeah, he was in North Dakota. So you just read his deposition? Right. So nobody with any expertise of any kind testified with regard to the photos? Only defense. Right. I get that. The only thing that the witness has testified about the photographs, that's what the cars looked like after the accident. And then he argued it in closing? He talked about it in opening, and he talked about it in closing. And I had a motion in the limine on file to die, and he was allowed to do that. Did you contemporaneously object? Yes, ma'am. That kind of lack of evidence for a closing argument is certainly objectionable in an opening. It certainly is as well. The word that would continue to be used in the phrase is pictures worth a thousand words, pictures worth a thousand words, pictures worth a thousand words. And the basis for trying to get it in was that he said that goes to credibility of the plaintiff. And if you take a look at the Meridiac case out of the First District, they say that the court in that case held that they couldn't do that, even when there was a certain amount of expert testimony in the case. They said calling that going to credibility is an end run around the relevancy rule. There has to be some kind of testimony. I think that what we know from the literature is that he objected by using the articles, but he didn't submit any articles that said otherwise. And I think that's a cover in itself. But it's certainly, well, I don't need any expert testimony because everybody knows that's true. I don't think anybody knows. Let me ask you about your medical testimony by Dr. Temple. He said that the 3-4 protrusion and the 5-6 bulge were consistent with the accident. Is that correct? He said everything that he found was consistent with the accident, except some of the things were pre- There was some pre-casting problem. The osteophyte was pre-existing. My client was sick, was unemployed. He was disabled before? Before, yes, ma'am. And he had some problems with his back, and the doctor talked about that. And he said some of them were aggravated by the collision. There were pre-existing and some were not. And he maybe went through a whole thing talking about what he found. And he had 23,000-something in damages in medical. Did he have any, I mean, were these just office visits, or did he have some He had MRIs. He had CT scans. He had therapy, quite extensive treatment early on. And then the treatment kind of stopped because it wasn't doing much good. And he went to the ER the day of? Day of. He was going from his girlfriend's house back to his home, and about 10 o'clock at night, and he stopped at the stop sign. He gets rear-ended. He was kind of dazed. And he got out, and the girl, he wanted to call the police, and the girl took off. But she wasn't going to do him anything. And back the first time the police went to the home, she didn't answer the door. But be that as it may, that night he went to the emergency room. And did anybody refute in any way the positive medical expenses? There was no testimony from the defense about anything other than the defendant's testimony. She was the sole witness. So basically the jury determined that the accident was not an approximate cause, even though it was for negligence. Right. Even though there was no other medical testimony connected to anything else. The defense counsel did ask if it could have been caused by something else. I objected to that, calling for speculation. He was allowed to answer that question. Of course it could have been caused by something else. But when he was asked the first question, do you have an opinion as to whether or not these medical conditions were caused by the motor vehicle accident, he began with, absolutely, that was his testimony. And then he went on to describe why he believed that. Mr. Rifflinger, how do we grant you relief in light of the Fraunabarger case? That case, the Fraunabarger, had at least some support from Dr. Bentelli. So the expert had some support. I don't know how the cross-examination went. But what you're saying is the defendant at least had an expert. Correct. And who said that she could tell by the damage to the vehicle that it couldn't have happened in that collision. Here they just chose to ignore the medical testimony. Yes, you're right. Without any... Until the jury could, you're right. Yeah. And this couldn't happen. Well, it did. And there's no evidence in this case that it didn't happen. Thank you. Thank you, Counsel. Counsel? Thank you for the opportunity to allow me to make, or allow you, good afternoon, Justices. Counsel ignores the main part of the defense argument and the whole basis of the introduction of the issue of damage to the car. And that is Dr. Temple's testimony. In cross-examination, he was asked, Now, Doctor, do you testify that the plaintiff had multiple abnormalities in part of your final diagnosis? Yes, it is. And you testify that it could have been caused by the accident. Is that correct? Yes. And then he equivocates. He says, It's also true, they might not have been caused by this accident. Isn't that correct? He says, Yes, that's true. It might not have been caused by the accident. Was your question asked to a reasonable degree of medical certainty? Yes. I'm sorry? I think we... The question you just read, I missed it, that you first... I did not premise it that way, but that's the way the doctor was testifying. Well, no. What did you ask? I missed it. I'm sorry. What was your question? Is it also true that they may, they, meaning the abnormalities, might not have been caused by this accident? Might not. Correct. Might or could. Correct. Might not. Yes, that's true. It might not have been caused by the accident. So he created the ambiguity. He told the jury, Am I caused by it? Am I not caused by it? I guess that depends on what he was asked prior to that. Was he asked? I would wonder if Mr. Riplinger asked him if it was his opinion within a reasonable degree of medical certainty whether or not the injuries were caused or exacerbated by the accident. There's no question that in direct examination he tied the two together. Okay. But it was my job in cross-examination to test the doctor's testimony. But might or could does not meet that standard. Okay. Who meets the standards? One or the other? As far as medical testimony? A reasonable degree of medical certainty. It's the same questions that were asked of counsel. The counsel in direct. There was no objection at all to that question. So Mr. Riplinger, to follow up with Justice Chapman, you're saying Mr. Riplinger never asked the doctor, Doctor, do you have an opinion to a reasonable degree of medical certainty as to whether the accident caused his injuries? I'm sure he did not use that word in a question, but I will doubt that somewhere in this deposition he asked the doctor whether his opinions he's given today are within a reasonable degree of medical certainty and answered positively. That would be my guess. But then your follow-up, your cross, was could it have been or might have been or possible. Might or could. That's not the same. That's not the same as reasonable degree of medical certainty. It's something might or could. Is it, sir? If he's giving all of his opinions within a reasonable degree of medical certainty, then he's giving his answers in direct examination as well as cross-examination under that same standard. That's the defense's decision. Okay. The other thing is, is that the defendant was allowed to testify regarding the impact and the degree of the impact and the damage to the two vehicles. There was no objection to that. So the photographs are basically, even if you would find that they were irrelevant or not connected, they're cumulative because the testimony was already offered by the defendant. Well, let's assume they are cumulative. If we assume that they're cumulative, then does your waving them around as if they're substantive evidence caused prejudice to the plaintiff? No, because it's just something demonstrative. Well, no. Was there an instruction given on demonstrative or substantive evidence? I don't think so, no. So you're waving them around. I mean, the jury thinks they're substantive evidence. What other conclusion could they draw? I could have made the same argument anyway because there was no question about the nature of the damage to the two vehicles. That was not something that was contested. Right. So if I would have just argued that both parties agreed that the only damage was to the death and license plate, and that's different than what the plaintiff told the doctor that he was struck at a rate of 25 to 30 miles per hour, that's significant. And the courts have said that's within the discretion of the court to allow it. And based on what the plaintiff said, that he was struck 25 to 30 miles per hour, there's a question about preexisting conditions and whether the findings that the doctor found three months after this accident, whether they were related to the accident or whether they were preexisting, the doctor said he didn't know because he didn't see the MRI before. He only saw the one after. There's no question the plaintiff suffered from abnormality beforehand. That was the question. So you bring everything together, well, then maybe the degree of impact is important here because we don't know whether the abnormalities that the doctor found three months after the accident were related to it or not. Were the photographs allowed to go back to the jury? I believe so, Your Honor. Okay. So in this case, we have two issues. We have issues of correlation between the injuries and the impact. And the other issue, we have the credibility of the plaintiff. The question is, could this minor impact have caused these injuries? And he's exaggerating what happened, being struck at 25 to 30 miles per hour. And the photographs could be shown just for that, to show that this gentleman is exaggerating. Is he exaggerating that? Is he exaggerating his injuries? Is he exaggerating what happened? And that's the purpose of having the testimony regarding the impact and the photographs about that. You don't think a 25-mile-per-hour impact could have caused a damage that you saw to that truck? That was the jury question. Certainly, the defense position could not have caused it. There's been more extensive evidence. There's no actual testimony on it. But I think any reasonable jury would conclude that. In fact, I know one of the cases that recited in support of your position, the other fifth district cases, had the same effect. The plaintiff testified that there was an excessive speed, and photographs showed up. The fifth district case? I'm just—what's the name of it? Well— It's the same as this one? Correct, correct. Well, the Jackson v. C case is a fifth district case. Well, I don't want all the fifth district cases. No, there's only two. I'm looking at it. There's Porter and then there's Ford. There's three fifth district cases, all which come—all state that Ford has discretion when there are a lot of photographs. Okay. I thought you were citing something that says, just like this case, where there's the credibility. There is. So, is it your position that even the ER visit was kind of cooked up and not related? I left that for the jury to decide. Okay. But I take it the doctor connected up the ER visit? I only asked him whether the abnormalities that he found in his X-ray studies were related or not. I did not ask him whether the ER was related. Well, and I did ask the jury. Yes, because I assume that's the only way you get the medical in. Right, right. Somebody had to testify to that. But the doctor also supposed that this was an accident at 25 to 30 miles per hour when he gave the testimony. Now, he equivocated later when he realized that the accident wasn't at that speed. What speed was it? I'm sorry. What speed was it then? Very minimal speed. I mean, there wasn't any testimony about the speed, but it certainly was less than 25 to 30 miles per hour. Well, she said her foot slipped off the pedal, didn't she? Correct. Yeah. So, it would have been a rolling speed. Correct. Theoretically, I mean, a rolling speed to create a dent in a bumper and a cracked bumper. Correct. So, whatever that might be. There wasn't any testimony. I don't know. That's the defense position. Thank you for your time. A little emotional for me. I apologize. I'm thinking about retiring as much as last night and I am. It's been a pleasure all these years to do so. Well, enjoy your retirement. Yes. Good for you. Enjoy it. Very good. Good for you. Thank you, counsel. Did you say somebody is preventing you? Somebody is preventing you from that. I'm going to retire. I shouldn't have asked. There was a couple of questions. One was about how I ask my questions, and I'll refer you to pages 34 and 35. The doctor's deposition. The doctor, do you have an opinion based on a recent treatment of surgery as to whether or not any of those conditions were caused by the motor vehicle accident by October 2010? Yes, absolutely. I'd say that the whiplash would be caused by, I think there's a good chance that the angular tear that we talked about, the integrity of the loss of the disc, that was reported that C5-6 could have been caused by the accident. Facet disease could certainly and is common to be caused by whiplash injury. The foraminal narrowing of the radicular symptoms can be caused by the disc material, which could be caused by the accident. It can accelerate the delivery of changes to the disc. And the other question by defense counsel. Okay. And what if the accident was not at 25 or 30 miles per hour, but was above what you expected? And I object to that. Question B, can you describe an accident and the effect on your neck? He did that. That's probably the most telling and of concern. Okay. So there could have been some other event, of course, that caused those findings. I object. So any event? We don't have any idea what event he was alluding to. It's just pure speculation. Correct. There was no evidence of anything else. He didn't bring any testimony that the man was disabled. I object to your claim there. The foraminal question is correct. Thank you very much. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. We'll take a very short recess and have arguments.